## SANN v. H. W. JOHNS MANUF'G CO.

(Supreme Court, Appellate Division, First Department.    April 9, 1897.)

1. NEGLIGENCE—PROXIMATE CAUSE.
     A workman, whose duty was to make repairs in a factory, attempted to put
     on a machine which he had repaired the belt by which it was operated, and
     in doing so was injured in consequence of the defective condition of the belt.
     It was not his duty to do this, and the machine was not in use that day.
     *Held*, that the condition of the belt was not the proximate cause of the in-
     jury.
2. CONTRIBUTORY NEGLIGENCE—ASSISTING PERSON IN DANGER.
     It is not contributory negligence to attempt to rescue a person in peril.

Appeal from trial term, New York county.

Action by Louise Sann, as administratrix of William Sann, de-
ceased, against the H. W. Johns Manufacturing Company, to re-
cover damages for the death of plaintiff's intestate.    The complaint
was dismissed on the merits, and plaintiff appeals.    Affirmed.

The action is brought to recover damages alleged to have been sustained by
the widow and next of kin of William Sann, deceased, through the negligence
of the defendant.    The substance of the complaint is that the deceased was at
work in the defendant's factory, trying to put the belt on a pulley of a certain
felt-washing machine; that while one of the employés was assisting the de-
ceased to adjust the belt, the said employé was caught in the belt, and carried
around the shaft; that the deceased endeavored to rescue his co-employé from
danger, and in attempting to extricate him was caught in the belt, and was
carried up over the shaft, and received the injuries from which he died.    The
negligence complained of was in omitting to furnish proper and suitable ap-
pliances to adjust the belt on the shaft, and in failing to have a proper pulley
on the felt-washing machine, and guards in and about the machinery; and also
that the belt was in a defective, improper, and negligent condition.    Upon the
trial the facts developed were:    That the plaintiff's intestate, William Sann,
on March 4, 1896, was in the employ of the defendant, a large manufacturer
of asbestus, at its factory in the city of Brooklyn.    On the day of the accident
Sann and one Schroeder were directed to repair the pipes of the felt-washing
machine.    This machine is very similar to the ordinary wash wringer used in
private families for wringing clothes.    It consists of two rollers, each about two
feet long and one foot in diameter, coming together, between which the felt
was passed and washed.    Instead of being operated by a handle, as in the case
of an ordinary wash wringer, a pulley was attached to an upright beam or
piece of wood on one side of the rollers, and a belt hanging from and running
on a main shaft was placed on the pulley, and the power thus transmitted by
the belt from the revolving shaft to the pulley operated the rollers.    After re-
pairing the steam pipes leading into the box on which the rollers were placed,
Schroeder attempted to put the belt hanging from the main shaft upon the
pulley attached to the felt washer, and Sann held the belt for him so as to
steady it.    Three or four efforts in this direction were unsuccessful.    Thereupon
a workman named O'Dea, who stood by, voluntarily got on a barrel, and at-
tempted to hold the belt a little from the main shaft so as to relieve the belt
from the friction of the shaft, and thereby make it easier for Schroeder to
throw the belt on the pulley.    The shaft at this time was revolving at full speed.

44 N.Y.S.—41

While O'Dea was standing on the barrel, attempting to hold the belt from the shaft, the belt slipped from the pulley on which Sann was attempting to put it, and either lapped or became stuck to the shaft, and formed a loop, and O'Dea was caught in the loop, and was carried around the shaft. Sann, seeing O'Dea's perilous position, waited for him as he was carried around the shaft, and at his first opportunity caught hold of him, and pulled him out of the loop. He succeeded in saving O'Dea, but was caught by the belt himself, and carried around by it 50 or 60 times, and from the injuries thus received he died. The evidence shows that no other means was furnished by the defendant for throwing on and off the belt, and that the method attempted was the usual one employed in this factory for this purpose, in which operation O'Dea had on previous occasions assisted by doing exactly what he did at the time the accident happened. There was evidence also that the belt was ragged and frayed at the edges, and had cuts in it, and was sticky from rosin; and there was testimony directed to showing that the means furnished for putting the belt on the pulley was crude and dangerous, and that a different and safer method was generally employed in other factories. Upon these and other facts appearing, the plaintiff claimed the right to go to the jury, for the reasons, among others: (1) That the defendant was negligent in violating section 12 of chapter 398 of the Laws of 1890, and, even if that statute did not apply, that it was a question for the jury to say, taking into consideration the risk and peril involved in adjusting the belt by the methods furnished by the defendant, whether the defendant was guilty of negligence in failing to furnish a safer method for throwing on and off this belt; (2) that the doctrine of obvious dangers and assumption of risk did not apply; (3) that the question of contributory negligence was one for the jury; (4) that the defendant's negligence was the direct and proximate cause of the death. This right was denied, and the complaint dismissed, and judgment thereafter entered, from which this appeal is taken.

Argued before VAN BRUNT, P. J., and WILLIAMS, O'BRIEN, INGRAHAM, and PARKER, JJ.

Louis J. Vorhaus, for appellant.
Herbert C. Smyth, for respondent.

O'BRIEN, J.   As, in our view, the inferences to be drawn from the facts proven are fatal to plaintiff's recovery upon one ground, which we shall hereafter discuss, it is unnecessary to critically examine the various grounds so ably presented by the appellant upon which it is claimed the liability of the defendant rests.   But we shall assume that it was clearly shown that the method used in the defendant's factory to put on this belt was very risky and dangerous, and in violation of all the principles of mechanics.   It is clear that, however defective the belt or the machinery employed, unless these were the proximate cause of the death of plaintiff's intestate— or, in other words, unless the negligence of the defendant was the proximate cause—the plaintiff cannot recover.   The deceased had charge of the job of repairing, and, to use the language of one of the witnesses, "if he saw anything that was necessary to be done, he did it.   This job they had was fitting the steam pipe, and to see that everything was right on the machine.   I know that it included seeing that everything was right on the machine, because, without the steam pipe, the washer would not be of any use." After they had finished their job, they attempted to put the belt on the washer, and this without its being their duty, or without receiving instructions to do so.   On the day in question there was no felt to be washed, and none in the room, and therefore the use

of the washer was not then required.   In repairing the steam pipes, Sann and Schroeder moved the felt washer from its original position, and the reason given for attempting to adjust the belt was to see if it was restored to its place; and it is a fair inference that failure was due to the fact that the belt, at the time they tried to place it on the washer, was not long enough to reach from the shaft to the pulley.   While they were attempting to do this, without instructions, or without its being in the line of their duty, O'Dea volunteered his assistance.   It was by this effort in which the three were engaged that the dangerous situation was created, which resulted in O'Dea's being placed in jeopardy, in rescuing whom Sann was killed.   If they had not undertaken to handle the belt, the place where they were at work, and the machinery that was in the room were in no sense dangerous, because the evidence is that the belt was tied in a knot, hanging up away from where the felt washer was standing.   There was nothing in the condition of the belt that was not perfectly apparent and obvious to those then present by the use of ordinary observation.   The situation before Sann and Schroeder attached the belt was one having no danger to any of the employés, and whatever danger came afterwards was created by their own acts. They assumed all the risks there were connected with the belt, because they were handling it when there was no necessity at all for their doing so; and it is difficult to get away from the inference of their negligence in attempting to place it on the pulley while the felt washer was so far away from the shaft that it was apparent that the belt was too short.   And it is to this circumstance, undoubtedly, that the accident was due, because it created the difficulty of getting the belt to run from the revolving shaft to the pulley.

Upon these facts the rule applied by the learned trial judge finds full support in authority.   As said by him at the end of the case:

"All this shows that, even if there was prior negligence on the part of the defendant in allowing the machinery to get out of order and repair, or in not complying with the requirements of the factory law, such negligence was not the direct and proximate cause of the accident, but only the remote cause. This is not enough.   Negligence, to be actionable, must be the direct and natural and proximate cause of the injury."

Undoubtedly, if the proximate cause of the perilous position in which O'Dea was placed when caught by the belt was the defendant's negligence, then the fact that O'Dea himself might have been guilty of contributory negligence (which would prevent recovery in a suit brought by him) would not prevent a recovery by the plaintiff.   Eckert v. Railroad Co., 43 N. Y. 502; Spooner v. Railroad Co., 115 N. Y. 22, 21 N. E. 696; Gibney v. State, 137 N. Y. 1, 33 N. E. 142. These cases, recognizing the natural instinct in man to go to the rescue of his fellow man in a situation of imminent peril, hold that it is not negligence per se for one to voluntarily risk his own safety and life in attempting to rescue another from impending danger. As said in Eckert v. Railroad Co., supra:

"The law has so high a regard for human life that it will not include negligence in an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons."

That case was where a child non sui juris went upon the tracks ·of the defendant company, and the plaintiff, seeing its danger from an approaching train, which was being negligently run at the time, rushed to its rescue, and in so doing received the injuries complain- ·ed of. So in the Spooner Case, supra, the theory of plaintiff's con- tributory negligence was not permitted to prevail, it there appear- ing that she went upon the track to warn off other children who were in danger, and in so doing caught her foot between the rail :and plank crossing, and, while in that position, was injured. In the Gibney Case, supra, a child fell into a canal through an open- ing in a bridge which was negligently permitted by the defendant ·to remain in a .defective state. The plaintiff's intestate (her hus- band) plunged into the canal to recover the child, and in so doing was drowned. There, in answer to appellant's contention that there was no negligence towards her husband, the court say:

"It is doubtless true that, except for the peril of the child, occasioned by his ·falling from the bridge into the water, there would have been no connection be- ·tween the negligence of the state and the drowning of the father. But the peril to which the child was exposed was, as has been found, the result of the negligence of the state, and the peril to which the father exposed himself was the natural consequence of the situation. It would have been in contravention ·of the most common facts in human experience if the father had not plunged .into the canal to save his child."

These cases, therefore, support the view that, if the negligence ·of the defendant had placed O'Dea in the perilous position from which he was rescued by Sann, and, actuated by the common im- ·pulse of humanity, Sann had gone to his rescue, and in that effort had met his death, a recovery for such death would not be affected per se either by a consideration of contributory negligence or by the argument that there was no negligence towards Sann himself. We fail to see, however, how a recovery can be sustained against the defendant upon the theory of negligence, when no evidence is presented from which the inference can be deduced that O'Dea's position was in any way proximately caused by the defendant's negligence. However humane and meritorious the conduct of Sann in going to the rescue of 'O'Dea, it is not a sufficient ground upon which to predicate liability as against the defendant for the result- ing injuries, where the latter's negligence was in no way the proxi- mate cause. As the evidence therefore failed to sustain the burden, which in this respect was placed upon the plaintiff, of showing that Sann was injured by attempting to rescue from a perilous position one who had been placed therein through the negligence of defend- ant, the disposition made by the trial judge was right, and the judg- ment appealed from must be affirmed, with costs. All concur.